UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. _____

NANCY A. ELLER,

    Plaintiff,

v.

OCWEN LOAN SERVICING, LLC,
A Delaware limited liability company,

    Defendant.

_____/

## COMPLAINT

Plaintiff, NANCY A. ELLER ("Eller"), by and through her undersigned counsel, sues Defendant, OCWEN LOAN SERVICING, LLC ("Ocwen"), and states as follows:

1. Plaintiff NANCY A. ELLER is an individual residing in Loxahatchee, Palm Beach County, Florida, and is otherwise *sui juris*.

2. Defendant OCWEN LOAN SERVICING, LLC is a Delaware limited liability company registered to do business in the State of Florida, and is doing business in West Palm Beach, Palm Beach County, Florida.

3. This action is brought by the Plaintiff alleging violations by Defendant of the Florida Whistleblower Act, F.S. 448.102, et seq. This Court has diversity jurisdiction over the parties pursuant to 28 U.S.C. § 1332 because the plaintiff is a resident of a different state from the defendant and because the value of the matter in controversy exceeds $75,000.

00141386-1

4.  Venue in this district is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions on which the claim is based occurred in the Southern District of Florida and in West Palm Beach, Florida in particular.

5.  Defendant is an employer as defined by F.S. 448.101(3).

6.  Plaintiff was an employee of Defendant as defined by F.S. 448.101(2).

7.  Plaintiff was employed at Defendant for approximately twelve years, beginning in approximately January 2001.

8.  Plaintiff was employed as a Contract Manager for Defendant at the time of the incidents described herein, and supervised a number of employees in the Complaint process, which involved verifying the particulars of complaints which were being prepared by outside counsel for foreclosure proceedings on loans owned by Defendant.

9.  In early February 2012, Plaintiff was asked by Defendant's internal senior litigation counsel to meet with Defendant's outside counsel from Massachusetts at the Defendant's offices in West Palm Beach Florida.

10. The purpose of the meeting with Massachusetts counsel was allegedly to prepare the Plaintiff for deposition related to the preparation, execution, notarization of documents used by Defendant in the course of servicing loans and/or the foreclosure process.

11. During the course of the meeting with Massachusetts counsel, Plaintiff was shown a series of documents used by Defendant in the course of servicing loans and/or the foreclosure process which purportedly contained her signature.

12. Such documents were not related to her then-position as Contract Manager in Complaints, and represented forgeries of her signature as witness on documents which she was otherwise not involved in preparing or reviewing.

00141386-1

13. When questioned about the signatures, Plaintiff recognized that the signatures were not hers and that the documents had been "robo-signed," and advised counsel of same.

14. She refused to falsely admit that the signatures on the documents were hers or that anyone else had authority to sign the documents on her behalf, and otherwise objected to the practice as she had in the past.

15. Plaintiff had been deposed six months earlier in an investigation by the Florida Attorney General's Office into allegations that Defendant had been involved in violations of the Florida Unfair and Deceptive Trade Practices Act by allegedly preparing, executing, and notarizing false and misleading documents, filing false and misleading documents in court and with government agencies, and in using false and misleading documents in the foreclosure process, and at that time testified that she had not prepared, executed or notarized some of the documents purporting to contain her signature.

16. During the February 2012 meeting with Massachusetts counsel, Plaintiff was pressured to falsely testify as to her signature on Defendant's documents and indicated her unwillingness to do so.

17. Two other employees also met with Massachusetts counsel at or near the same time, and immediately after Plaintiff's meeting with counsel, one of the two involved, who was a supervisor, tried to intimidate her into testifying falsely concerning the signatures, going so far as to suggest that she would face criminal prosecution.

18. Within days after the Plaintiff's meeting with Massachusetts counsel, all of the associates that Plaintiff supervised were called into a meeting with Plaintiff's supervisor and were pressed to complain to management that she was aggressive, inconsistent, exhibited favoritism, and made derogatory comments about others. Plaintiff's associates were also

called into individual meetings with Plaintiff's supervisor to discuss her and she was later told by several of her associates that there was a witch hunt against her.

19. Despite a stellar work record and no prior disciplinary action in eleven years, on February 24, 2012, Plaintiff was called into her supervisor's office and issued a written warning for "inappropriate behavior" including allegedly exhibiting favoritism and allowing personal beliefs to influence her interactions with associates, as well as allegedly treating associates poorly and causing them to fear making errors on her team.

20. During the meeting at which her written warning was administered, Plaintiff's supervisor referred to himself as "the Godfather" and told her that if he was told by others more "things" on her, that he would fire her. She was not permitted to defend against the allegations against her.

21. Thereafter, Plaintiff was subject to repeated incidents in which she was written disciplinary reports which were not supported by actual occurrences, and was threatened with additional disciplinary action.

22. Thereafter, Plaintiff was singled out and harassed by her supervisor who would linger around her desk to the point that Plaintiff asked for her desk to be relocated.

23. Thereafter, Plaintiff's team was singled out and was not provided necessary resources to complete its work, her personnel was repeatedly shuffled, and Plaintiff's team was repeatedly interfered with by management above Plaintiff.

24. The course of retaliation Plaintiff experienced after refusing to participate in giving false testimony as to her purported signatures on Defendant's documents continued unabated and Plaintiff constantly feared that her job was in jeopardy and that she was being set up for termination.

25. Plaintiff experienced severe emotional trauma as a result of the retaliation and treatment from management, as took a period of FMLA leave in order to try to resolve the situation; however, even after her return, the retaliation and mistreatment continued.

26. In March 2013, after receiving two additional disciplinary reports on the same day, Plaintiff gave notice to Defendant of her resignation, and identified in the notice of resignation that she could no longer tolerate the hostile work environment and its effect on her health.

27. As a result of the Defendant's actions, the Plaintiff has suffered substantial economic damage.

28. Plaintiff has retained the undersigned counsel and agreed to pay a reasonable attorney's fee in the prosecution of this action.

## COUNT I – RETALIATION UNDER FLORIDA WHISTLEBLOWER STATUTE 448.102

29. Plaintiff hereby readopts and realleges paragraphs 1 through 28 as if fully set forth herein.

30. Plaintiff was an employee covered by the protections of Florida's Whistleblower statute at F.S. 448.101 et seq.

31. Defendant was an employer covered under Florida's Whistleblower statute at F.S. 448.101 et seq.

32. Plaintiff objected to or refused to participate in an activity, policy, or practice of the Defendant when she refused to testify falsely as to her purported signatures on Defendant's documents in the scope of the Massachusetts litigation.

33. Offering false testimony as to the purported signatures on Defendant's documents in the scope of the Massachusetts litigation would have constituted perjury, a criminal violation of law.

34. Defendant's attempts to suborn perjury would also constitute a criminal violation of law.

35. Plaintiff objected to and refused to participate in the Defendant's practice of robo-signing or in covering up such conduct, all of which violates Florida's Unfair and Deceptive Trade Practices Act, as alleged in multi-state litigation against Defendant which was recently settled by entry of a consent decree against Defendant.

36. Because Plaintiff objected to and refused to participate in offering false testimony, refused to participate in robo-signing, and refused to participate in covering up any such conduct, the Plaintiff was subject to retaliation in the form of repeated baseless disciplinary actions against her, threats of termination, harassment and intimidation by her supervisor and other managers, and interference with the performance of her team.

37. Plaintiff suffered emotional trauma as a result of the retaliation and ultimately resigned her position with Defendant due to the unrelenting hostile environment she was experiencing, which any reasonable person under the same circumstances would do.

38. As a result of her constructive discharge, Plaintiff lost current and future salary and benefits, including further possible opportunities for advancement, and suffered emotional harm for which she is entitled to be compensated.

39. As a result of Defendant's conduct, Plaintiff is entitled to compensation, including:

    (A) Compensation for lost wages, benefits, and other remuneration, including the value of lost opportunities for advancement,

    (B) All compensatory damages allowable by law,

00141386-1

(C) An injunction restraining continued violation of this Act,

(D) Interest, and

(E) Attorneys fees and costs for pursuing this action pursuant to F.S. 448.104.

WHEREFORE, Plaintiff NANCY A. ELLER demands judgment against OCWEN LOAN SERVICING, LLC for all relief permitted under the Florida Whistleblower statute at F.S. 448.101 et seq. and for any such other relief, monetary and/or equitable, which this Court determines is appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all issues so triable.

DEBORAH L. SANDERS, ESQUIRE
Florida Bar No. 659509
Email: dls@crarybuchanan.com
CRARY, BUCHANAN, P.A.
759 S.W. Federal Hwy, Suite 106
Post Office Drawer 24
Stuart, Florida 34995-0024
Telephone: (772) 287-2600
Facsimile: (772) 223-4358
Attorneys for the Plaintiff